CITY OF TYLER v. C. A. COCKER.

Decided January 20, 1910.

**1.—Fundamental Error—City Tax Assessor—Commissions.**

A recovery against a city by its tax assessor for his commissions for assessing for taxation certain property (rolling stock of a railway), is fundamentally erroneous where it appears on the face of his petition that the property so assessed by him was not situated in the city nor subject to taxation there.

**2.—Taxation—Cities—Railway—Rolling Stock.**

A city has no power to subject to its taxation personal property not found within its limits on the day to which the assessment relates, though the same be rolling stock of a railway having its principal office in such city. The action of the assessor in listing for city taxation the entire rolling stock of an extensive railway running through it, was unlawful and gave him no right to commissions from the city on the amount of such assessment, though he made it by direction of the city authorities.

**3.—Jurisdiction—Pleading—Amount in Controversy.**

Where plaintiff's pleading shows no legal right to recover the entire sum claimed, and fails to show the amount which was legally recoverable, he does not show an amount in controversy within the jurisdiction. But the court, on reversal, may remand the cause to give opportunity for an amendment showing a claim sufficient in amount.

Appeal from the County Court of Smith County. Tried below before Hon. J. A. Bullock.

*C. O. Griggs,* for appellant.—The evidence in this case shows that the rolling stock of the St. Louis Southwestern Railway Company of Texas, which was assessed for taxes by plaintiff, is the entire rolling stock of said company used on its various branches and divisions in the State of Texas. State v. Austin & N. W. Ry. Co., 94 Texas, 530.

Any act of the said city in authorizing and approving such assessment rolls thereof would be ultra vires and not binding on the city. Williams v. Davidson, 43 Texas, 34; Ellis v. City of Cleburne, 35 S. W., 497.

A city in this State can not do an ultra vires act and thereby create an estoppel against it, for persons dealing with the city are bound to know its powers to contract. Williams v. Davidson, 43 Texas, 34; Ellis v. City of Cleburne, 35 S. W., 497; Bryan v. Page, 51 Texas, 535.

*Gentry & Castle,* for appellee.—The mayor and board of aldermen of the city of Tyler having authorized the assessment of the rolling stock of the St. Louis Southwestern Railway Company of Texas in the city of Tyler and having approved and accepted said rolls, the order approving said rolls was an adjudication of the amount due the assessor for making said assessment and the city in a suit brought by him for the amount due as commissions for his services could not collaterally attack the said assessment, but the same became a binding obligation upon the city for the amount of the commissions due

the assessor for making the assessment. Dimmit County v. Cavender, 65 S. W., 881; 15 Am. & Eng. Enc. Law, 965.

HODGES, ASSOCIATE JUSTICE.—The appeal in this case is from a judgment rendered against the appellant in favor of the appellee for commissions claimed by him for assessing the rolling stock of the Cotton Belt Railway Company. The petition alleges that the appellee was during the years 1905, 1906 and 1907 the duly elected, qualified and acting assessor and collector of the city of Tyler; that the latter is a municipal corporation situated in Smith County; that during the year 1907 the appellee, in pursuance of an order theretofore made by the mayor and board of aldermen of the city of Tyler, and by virtue of the duties required of him under the ordinance of said city, assessed the taxes for the years 1905, 1906 and 1907 on the rolling stock of the St. Louis Southwestern Railway Company of Texas, a corporation duly incorporated under the laws of the State of Texas, with its principal office and place of business in the city of Tyler, Texas; that the total amount assessed for the various funds as required by the ordinance of said city against said railway company on its rolling stock for said years was $367,030; that under the ordinance of said city plaintiff was allowed and entitled to receive as his commissions one percent on said assessment, or the sum of $367.03. The remainder of the petition alleges the presentation of the claim for the commissions mentioned, and the refusal of payment by the city council of the city of Tyler. Among other defenses pleaded by the city, was a general demurrer and a special exception, but neither of these appears to have been called to the attention of the trial court, as there is no order disposing of them. A trial before the court without a jury resulted in a judgment in favor of the appellee for the full amount sued for.

It occurs to us, from an inspection of the record, that this judgment should be reversed because it is fundamentally erroneous. Both the pleadings and the evidence show that the appellee sought and obtained a judgment for legal commissions for assessing for taxes the entire rolling stock of the St. Louis Southwestern Railway Company of Texas, commonly called the Cotton Belt, situated in this State. We judicially know as a geographical fact that this railroad company has in this State a main line and several branches traversing different portions of the State and reaching through different cities and counties. Some of those branches do not touch the city of Tyler, nor is it necessary, in their operation, to go through or near that city. Gulf, C. & S. F. Ry. Co. v. State, 72 Texas, 410, 10 S. W., 81; Miller v. Texas & N. O. Ry. Co., 83 Texas, 518, 18 S. W., 954; 7 Ency. Evid., 943-4. Upon the same principle the court should take cognizance of the fact that the rolling stock of this railway company, or at least the greater part of it, is required to be constantly in actual use in transporting freight and passengers over its various lines, and that on the 1st day of January of each year a comparatively small portion of it could be within the limits of the city of Tyler; and further, that but a comparatively small portion of it would naturally and normally be kept within the city limits of the city of

Tyler for any purposes whatever connected with the railway business. It was not alleged in the petition that the city was acting under a special charter, and for the purpose of testing the sufficiency of this pleading, we must assume that it was operating under the general law governing the incorporation of cities and towns.

Section 5 of article 8 of the Constitution provides: "All property of railroad companies, of whatever description, lying or being within the limits of any city or incorporated town within this State, shall bear its proportionate share of municipal taxation, and if any such property shall not have been heretofore rendered, the authorities of the city or town within which it lies shall have power to require its rendition, and collect the usual municipal tax thereon, as on other property lying within said municipality."

In section 8 of the same article it is provided that, "All property of railroad companies shall be assessed, and the taxes collected in the several counties in which said property is situated, including so much of the roadbed and fixtures as shall be in each county. The rolling stock may be assessed in gross in the county where the principal office of the company is located, and the county tax paid upon it shall be apportioned by the comptroller, in proportion to the distance such road may run through any such county, among the several counties through which the road passes, as a part of their tax assets."

These provisions would appear to change the rule which seems to be adopted in some jurisdictions, of making the rolling stock of railroad companies taxable at the place of the corporate domicile. The terms, "lying or being within the limits of any city or incorporated town," etc., when applied to the tangible and movable personal property, would hardly be considered as meaning other than that the property must be actually physically within the limits of the municipality where it is sought to be taxed, in order to be subject thereto. Laws affecting taxation are generally construed strictly against the government, or taxing power, and will not be extended beyond the plain import of the language used. Atlantic & D. C. Ry. Co. v. Lyons, 101 Va., 1, 42 S. E., 932. The terms of our Constitution are as potent in excluding from the taxing powers of cities and towns personal property not "lying and being" within their limits, as in conferring the right to tax that which is. Under section 8 above quoted, Smith County, in which the city of Tyler is located, and of which it is the county seat, is entitled only to tax that portion of the value of the entire rolling stock of the Cotton Belt Railway Company as is measured by the proportion which the mileage in that county bears to the entire mileage of the road in all the counties in this State. We know that the mileage in Smith County is much greater than in the city of Tyler. It would be charging the framers of our Constitution with a grievous oversight to so construe the language they employed in sections 5 and 8 as limiting the right of taxations as to counties to only a portion of the rolling stock and as permitting cities located within such counties the right to tax for municipal purposes the entire rolling stock. It seems to be the general rule in this State that movable personal property is taxable where it is situated, except where otherwise provided by law. Ferris v. Kimble, 75 Texas,

476, 12 S. W., 689; Rev. Civ. Stats., 5068. Under the provisions of art. 500 of the Revised Civil Statutes only property situated within the limits of a city is taxable by such municipalities. So far as our observation has extended, this case presents the only instance in which a city has undertaken to assess for taxation the rolling stock of an entire railroad solely on account of the fact that the general office of the corporation was located within its limits. However, it is but just to say that we gather from the record and brief of counsel for the city that while the assessment was made the tax· was not collected. It appears to have been the uniform construction adopted throughout the State by the officers and departments charged with the collection of municipal taxes, that cities and towns had no such right. Such a course of conduct, after the lapse of so many years, is not without force in determining the construction that should now be adopted by the courts. Atlantic, etc., Ry. Co. v. Lyons, supra. If the rolling stock of the Cotton Belt was not taxable in the city of Tyler it was not there subject to assessment for taxes by the appellee, and the municipal officers could confer no such authority upon him. This being true, the allegations of the petition show the performance of no service as assessor for which appellee would be entitled to recover commissions against the city. We do not mean to say that no part of the rolling stock of the railway company would be subject to taxation within the limits of the appellant city, although there seems to be authority for such a holding. Davenport v. Mississippi & M. Ry. Co., 16 Iowa, 349. But the undisputed facts in this case show that the assessment of the entire rolling stock was made in gross, thus making it impossible to separate that which may have been within the limits and subject to taxation from that larger portion which we know from the very nature of things could not have been so situated.

Article 5083 of the Revised Civil Statutes contains the only provision of law relating to the rendition of the rolling stock of railway corporations for taxation. That provides that every railroad corporation in this State shall deliver a sworn statement on or before the 1st day of April in each year to the assessor of the county in which its principal office is situated, setting forth the true and full value of the rolling stock of said railroad, together with the names of the counties through which it runs and the number of miles of roadbed in each of said counties, and that said assessment shall be submitted for review to the board of equalization of the county in which its principal office is situated. After providing for the method of equalizing such valuations with that of other property, it is required of this board that it shall certify the final valuation to the Comptroller of Public Accounts, who shall proceed at once to apportion the amount of such valuation among the counties through which the road runs, in proportion to the distance such road may run through any such county, and shall certify such apportionment to the assessors of such counties, and this shall constitute part of the taxable assets of such counties, and the assessor of each of said counties shall list and enter the same upon the rolls for taxation as other personal property situated in said county.

Upon the trial of this case the appellee testified that he was in-

structed by the city council and mayor to assess the entire rolling stock of the St. Louis Southwestern Railway Company of Texas, and that in pursuance of that order he sent to the office of the Comptroller for certified copies of the State and county renditions of that railway company on its rolling stock for the years 1905, 1906 and 1907; that upon receipt of those copies he made the city assessments on the entire rolling stock for the years above mentioned; that he made out a supplemental tax roll for those assessments and submitted it to the city council, by which it was approved; that the aggregate amount of the taxes due for those years as shown by the roll was $376,030, and that his fees allowed for assessing these taxes were one percent, amounting to $376.03.

If we hold, as we think we should, that the petition in this case shows upon its face that the appellee in stating his cause of action is relying in part upon facts which can not furnish the basis of a recovery in this suit, we are unable to say that his action, if he has any, is within the jurisdiction of the court in which it was filed. Admitting that there was a portion of the rolling stock of the railroad company within the limits of the city of Tyler, and subject to assessment and taxation by the city, and for assessing which appellee would be entitled to commissions, it does not affirmatively, or even inferentially, appear from the petition that such commissions would amount to a sum within the jurisdiction of the court below. If in stating his cause of action the plaintinff in a suit relies upon different and separable groups of facts, some of which disclose no cause of action upon their face, the jurisdiction of the trial court must be determined by the amount of the claim resting upon those facts which are not subject to a general demurrer.

For the reasons mentioned, the judgment of the trial court is reversed and this cause remanded. It might be that under a proper pleading the appellee would be entitled to a judgment for some amount, but under the petition as presented here we do not think that he is; and for the purpose of preventing this judgment from operating as a bar to a cause of action in a court of competent jurisdiction to recover such sum as he may show himself entitled to, we have thought proper to reverse and remand the case, and it is accordingly so ordered.

*Reversed and .remanded.*