## CITY OF DALLAS v. GULF, C. & S. F. RY. CO. (No. 332.)*

Court of Civil Appeals of Texas. Eastland. Nov. 18, 1927.

Rehearing Denied Jan. 6, 1928.

**I. Municipal corporations ⬅966(7)—City charter provision, making method of assessment by state law cumulative, did not adopt state law regarding taxation of railroad engines (Rev. St. 1925, art. 7145 et seq.).**

Dallas City Charter, art. 2, § 4, providing that city should have power to assess property and shares of corporations, etc., as same were assessed by the state law, which should be cumulative of all provisions of act, did not amount to adoption of Rev. St. 1925, art. 7145 et seq., regarding rendition and assessment of railroad engines within city.

**2. Municipal corporations ⬅966(7)—City charter provision for assessment in accordance with state laws did not adopt state laws regarding assessment of railroad engines (Rev. St. 1925, art. 7145 et seq.).**

Dallas City Charter, art. 3, § 18, providing that, unless otherwise provided, all property in city liable to taxation should be assessed in accordance with provisions of general laws of state in so far as applicable, did not amount to adoption of Rev. St. 1925, art. 7145 et seq., with reference to rendition and assessment of railroad engines within city.

**3. Municipal corporations ⬅966(7)—City charter provision for rendition of property for assessments did not adopt state law regarding assessment of railroad engines.**

Dallas City Charter, art. 7, § 8, providing that all property should be rendered for taxation as provided by laws of state for rendition of property for assessment by county, did not amount to adoption of state statutes with reference to rendition and assessment of railroad engines within city (Rev. St. 1925, art. 7145 et seq.), in view of further provisions of section clearly providing that rendition should be made to city assessor and collector.

**4. Municipal corporations ⬅966(7)—Railroad not having rendered engines for taxation, city assessor could render same for taxation (Const. art. 8, § 5).**

Railway company not having rendered railroad engines within city on January 1st for taxation, assessor, and collector of city of Dallas had power under Charter, art. 7, § 6, article 2, § 4, article 3, § 18, and article 7, § 8, and under Const. art. 8, § 5, to render same for taxation.

**5. Taxation ⬅260—Permanency of location is not required to fix "situs" for taxation purposes.**

Permanency of location is not required to fix situs for purposes of taxation; word "situs" meaning site, situation, location, or place where a thing is.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Situs.]

**6. Taxation ⬅260—For taxation purposes, situs of personal property depends upon character of its use.**

For purposes of taxation, situs of personal property depends upon character of use to which such property is put.

**7. Municipal corporation ⬅966(7)—That switch engines might not remain permanently in city could not relieve them of share of municipal taxation.**

That switch engines in city on January 1st might not remain permanently in city of Dallas, but might be transferred to some other switchyard of railway company, could not operate to relieve them of their proper share of municipal taxation.

**8. Municipal corporations ⬅966(7)—Railroad switch engines within city limits on January 1st. dedicated to local use, had taxable situs in city (Const. art. 8, § 5).**

Railroad switch engines actually situated within city limits on 1st day of January of respective taxable years, dedicated to local use which might continue for full year, were clearly incorporated in bulk of personal property situated in city on such dates, and had taxable situs in city under Const. art. 8, § 5.

**9. Municipal corporations ⬅978(10)—Where only four of five railroad engines were rendered and assessed, city was not entitled to judgment for taxes on fifth engine.**

Where there were five railroad switch engines within city on January 1st of taxable year, but only four were rendered and assessed, city was not entitled to judgment for taxes on fifth engine.

**10. Municipal corporations ⬅978(10)—Where proof showed three railroad engines in city instead of four as alleged, city was entitled to judgment for three-fourths of tax.**

In action by city to collect taxes on railroad switch engines, where proof showed there were only three engines within city limits on January 1st of taxable year in question, instead of four, as alleged in original petition, city was entitled to judgment for three-fourths of amount of taxes claimed for years in question.

Appeal from District Court, Dallas County; E. E. Hurt, Special Judge.

Action by the City of Dallas against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

J. J. Collins, Hugh S. Grady, H. P. Kucera and W. Hughes Knight, all of Dallas, for appellant.

Lee, Lomax & Wren, of Fort Worth, W. P. Donaldson and Robertson, Robertson & Gannon, all of Dallas, for appellee.

HICKMAN, J. This suit was instituted by the city of Dallas, seeking to collect ad valorem taxes, penalties, and interest, and to foreclose a tax lien upon four switch engines belonging to appellee. The taxes alleged to be due and owing were for the years 1918, 1919, and 1920. By trial amendment the

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted by Supreme Court March 14, 1928.
1 S.W.(2d)—32

switch engines were particularly described by numbers, and taxes were sought on five such engines for the year 1918 and three such engines for each of the other two years. The pertinent allegations of appellant's petition were that the switch engines were located and maintained within the city of Dallas as of January 1st of the years in question, and that the same were assigned to the local switchyards within the limits of said city for switching purposes and constituted a part of its local equipment. That as such local equipment the engines acquired business situs for purposes of municipal taxation as provided by the charter of the city of Dallas and the Constitution of this state. Upon a trial of the case before the court without a jury, judgment was rendered in favor of the railway company, from which judgment the city of Dallas has perfected this appeal.

In considering the questions presented, it will be borne in mind that the city of Dallas is incorporated under a special charter, and that by section 26, art. 14, of said charter it is provided, in substance, that the act shall be deemed a public act, and judicial notice shall be taken thereof in all courts and places without the same having been pleaded or read in evidence.

Article 8, § 5, of the Constitution of Texas reads as follows:

"All property of railroad companies, of whatever description, lying or being within the limits of any city or incorporated town within this state, shall bear its proportionate share of municipal taxation, and if any such property shall not have been heretofore rendered, the authorities of the city or town within which it lies, shall have power to require its rendition, and collect the usual municipal tax thereon, as on other property lying within said municipality."

This article clearly provides for the taxation of personal property of a railroad company for municipal purposes, provided such personal property is situated within the limits of the municipality, the power so to do being conferred directly upon the municipal authorities without the necessity of enactments by the state Legislature on the subject.

Appellee insists that the provision is not self-executing; that the Dallas charter adopts the provisions of the Revised Statutes (Rev. St. 1925, art. 7145 et seq.) as to the rendition of personal property for assessment by the county; and, since such Revised Statutes provide for the rendition of the rolling stock of a railroad company for state and county taxes to be in the county in which is situated the general offices of such company, there was no duty resting upon appellee to render the switch engines for taxes to the tax assessor of the city of Dallas; and that, by article 7, § 6, of said charter, the power of the tax assessor and collector of said city to render property for taxation was limited to those cases in which there was a duty resting upon the owner to render same to him. We express no opinion on the question as to whether the provision is self-executing, because we believe the city's charter makes proper provision for its execution. In support of the contention that the city of Dallas has failed to provide for the rendition of such property directly to its assessor, but has adopted the Revised Statutes of this state with reference to such rendition, appellee relies upon three sections of the charter of the city of Dallas, which we shall notice briefly.

[1] The first section relied upon is article 2, § 4, of the charter, which reads as follows:

"The city of Dallas shall have power to assess the property and shares of corporations, companies, banks and such other institutions as the same are now or may be assessed by the state law in such cases made and provided, which shall be cumulative of all provisions of this act, and shall have full power to enforce collection of such taxes in such manner as may be provided for herein and as by said commission may be deemed necessary."

We cannot agree that this section amounts to an adoption of the state statutes with reference to the rendition and assessment of the property in suit. While the article does refer to the assessment by the state law in such cases made and provided, yet it expressly makes that method of assessment cumulative of all provisions of the act.

[2] Another section of the charter relied on by appellee is article 3, § 18. This section confers broad powers upon the authorities of the city of Dallas for assessing, levying, and collecting taxes on all kinds of property, and contains the following language, emphasized by appellee:

"Unless otherwise provided by this act and ordinances passed thereunder, all property in such city liable to taxation shall be assessed in accordance with the provisions of general laws of the state in so far as applicable."

It could hardly be contended that the provisions of the general laws of the state with reference to the rendition of the rolling stock of a railroad company for taxation for state and county purposes are at all applicable to the rendition of personal property to a municipality. This section, in our opinion, does not support the contention of appellee that the charter of the city of Dallas adopts the Revised Statutes with reference to the method of rendering this property for taxes.

[3] The other provision relied on by appellee in support of this contention is a portion of article 7, § 8, of the said charter. The portion of such article and section quoted in appellee's brief and relied upon by it reads as follows:

"All property, real and personal, shall be rendered for taxation by the owner thereof or his agent, as provided by the laws of the state for the rendition of property for assessment by the county."

[4] Further provisions of this section, however, clearly provide that the rendition shall

be made to the city assessor and collector. The construction insisted upon by appellee, to our minds, would invalidate all tax assessments on all property in the city of Dallas unless same was rendered to the county assessor and collector. A study of these sections relied upon by appellee, together with the other provisions of the charter of the city of Dallas, convinces us that ample provision is made in said charter for the rendition, assessment, levy, and collection of all city ad valorem taxes. We therefore conclude that, since the railway company did not render the property in question for taxation for any of the years above mentioned, the assessor and collector of the city of Dallas had the power, under the charter of such city, to render same for taxation, provided such property was properly taxable by the city.

This brings us to a consideration of the question of whether the switch engines had acquired a situs for the purpose of taxation as of January 1st of the respective years for which taxes are claimed.

Upon a trial of the case, it was admitted by counsel for appellee that on January 1, 1918, five switch engines were located in the local switchyards of appellee within the limits of the city of Dallas; that on January 1, 1919, and January 1, 1920, three switch engines were located in such switchyards. By reference to the numbers of said engines set out in the agreement, it will be found that two of the three engines in the yards of appellee on January 1, 1919, were the same as two of the engines so located on January 1, 1918. It will also be found that these two engines were likewise located in such yards on January 1, 1920, and that the third engine located there at that time was likewise there on January 1, 1918, but was not there on January 1, 1919.

The evidence shows that switch engines are maintained in the yards of appellee located in the city of Dallas and are required for the handling of the business in these yards. Such engines ordinarily are confined to switching service only, but make occasional trips outside the city limits to bring in a train. The general yardmaster for appellee at Dallas testified, in substance, that he was unable to recall the dates, but on several occasions the switch engines had been used for emergency purposes outside of the city limits for engine failures and derailments in bringing trains in. On such occasions they would be sent out as far as Whiterock Lake towards Paris and as far as Hale towards Cleburne. Whiterock is approximately 7 miles from Dallas and Hale approximately 9 miles. In those instances the switch engines performed the work of the ordinary locomotive in pulling the trains into the terminal. He further testified that, when it is necessary to make general repairs on the switch engines, they are sent to Cleburne for that purpose. This

witness testified on cross-examination that he had examined the records of the company and found that these switch engines involved in this lawsuit were confined to switching service only, outside of an occasional trip out to bring in a train or something of that kind; but that he could not say from memory whether they were kept in Dallas throughout those years for that purpose. The evidence further discloses that it was not the practice of appellee to assign any particular switch engine to Dallas for use entirely; that a switch engine might be in Dallas on the 1st of January of a given year and might be transferred to some other point, and then be brought back to Dallas.

[5-8] From a consideration of the whole of the testimony it is conclusively established that switch engines are dedicated to work of a local nature. While they may not be assigned permanently to a particular switchyard, yet the nature of their use is almost entirely local, and distinguishes them from the locomotives used for transportation purposes generally on the lines of the railroad company. "The word 'situs' means site, situation, location, a place where a thing is." Greene County v. Wright, 126 Ga. 504, 54 S. E. 951.

Permanency of location is not required to fix situs. It it were, a large percentage of the personal property in our state would escape taxation. For the purposes of taxation, the situs of personal property depends upon the character of the use to which such property is put. To our minds the fact that these switch engines might not remain permanently in Dallas, but might be transferred to some other switchyard of appellee could not operate to relieve them of their proper share of municipal taxation. They were actually situated in the city limits on the 1st day of January of the respective taxable years, were dedicated to a local use which might continue for a full year, and were clearly incorporated in the bulk of the personal property situated in the city of Dallas on such dates. These engines were not distinguishable from other personal property situated in the city on such dates, except that there was no present intention to keep them in the city permanently.

We are of the opinion that the switch engines in controversy had a taxable situs in the city of Dallas for the years alleged in appellant's petition. Hardesty v. Fleming, 57 Tex. 395; Waggoner v. Whaley, 21 Tex. Civ. App. 1, 50 S. W. 154; Bell County v. Hines (Tex. Civ. App.) 219 S. W. 556; Kelley v. Rhoads, 7 Wyo. 237, 51 P. 593, 39 L. R. A. 594, 75 Am. St. Rep. 904; Brown v. Houston, 114 U. S. 622, 5 S. Ct. 1091, 29 L. Ed. 257; Griggsry Construction Co. v. Freeman, 108 La. 435, 32 So. 399, 58 L. R. A. 349; Eoff v. Kennefick, 80 Ark. 138, 96 S. W. 986, 7 L. R. A. (N. S.) 704, 117 Am. St. Rep. 79, 10 Ann. Cas. 63.

The Texas cases discussing questions very

similar to the question presented in this case are City of Tyler v. Cocker, 58 Tex. Civ. App. 605, 124 S. W. 729, and State v. H. & T. C. Ry. Co. (Tex. Civ. App.) 209 S. W. 820. In the former case the tax assessor of the city of Tyler assessed for city purposes the entire rolling stock of the Cottonbelt Railway Company; the city of Tyler being the home office of the company. Suit was instituted by the assessor against the city for his commissions for making the assessment. The question was directly raised by the suit as to whether such assessment was a legal one for which the assessor would be entitled to his commissions. In discussing the question, the court took judicial notice of the fact that the entire rolling stock of the railway company was not within the city limits on the first day of the taxable year, as required by law, and held that such city had not the power to tax all of the rolling stock of the railway company, for the reason that such rolling stock was not actually physically situated within its limits. In disposing of the question, however, the court construed sections 5 and 8 of article 8 of the Constitution, and concluded that the phrase, "lying or being within the limits of any city or incorporated town," meant that the tangible and movable personal property, in order to be taxable by a city, must be actually physically within the limits of the city. Contained in this opinion is the following statement:

"We do not mean to say that no part of the rolling stock of the railway company would be subject to taxation within the limits of the appellant city, although there seems to be authority for such a holding."

In the case of State v. H. & T. C. Ry. Co., supra, the question involved was the right of the Houston navigation district to levy and assess taxes on the rolling stock of the railway company. It was not shown that any particular part of such rolling stock was located within the district as of January 1st of the taxable year, or that any part of such rolling stock was allocated to such district for use therein with such degree of permanency as to withdraw such part from the general body of rolling stock used by the railroad company along its lines throughout the state. The court held that, in the absence of such showing, the district was without power to levy and collect the tax; but, in connection with the holding, the following language was used:

"The record in this case does not disclose that any portion of the property in question was in Harris county as of January 1st of any year for which a tax is sought to be collected. The law which gives the Houston Ship Channel navigation district its taxing power provides that taxes shall be levied and assessed upon 'all property within said navigation district, whether real, personal, mixed, or otherwise.' This means that the property 'must be actually physically within the limits of the municipality where it is sought to be taxed, in order to be subject thereto.'"

In the instant case we believe the record supplies the deficiencies pointed out in those opinions, and clearly presents a case of tangible personal property being actually physically situated within the limits of the municipality on the 1st day of January of the taxable years, which property had theretofore been segregated from the body of the general rolling stock of the railway company and permanently dedicated to a local use; not permanent in the locality, but for an indefinite period which, in determining situs, amounts to permanency. This being true, we conclude that it comes within the provisions of article 8, § 5, of the Texas Constitution, and should, as provided by such article, bear its proportionate share of municipal taxation.

[9, 10] No question was raised by the record as to the valuation of the property or the rate of taxation thereon. The appellee prayed for $162.34 as taxes for the year 1918 on four engines. The proof showed that there were five engines in the switchyards on January 1st of that year; but, as only four were rendered and assessed, appellant is not entitled to judgment for taxes on the fifth engine. For the other two years the proof showed that there were only three engines instead of four, as alleged in the original petition. Under this proof, appellant is entitled to judgment for three-fourths of the amount of taxes claimed for the years 1919 and 1920. We have calculated the amount of taxes recoverable based upon the full amount prayed for for the year 1918 and three-fourths of the amount prayed for for the other two years, and find the total taxes due, exclusive of penalties and interest, to be $447.06.

It is therefore our order that the judgment of the trial court be reversed, and that judgment be here rendered in favor of the city of Dallas against appellee for the full amount of taxes claimed for the year 1918, and three-fourths of the amount claimed for the other years, with 6 per cent. interest per annum on the taxes due for the several years computed from November 1st of such taxable year, and 10 per cent. of the total tax as penalty.

Reversed and rendered.