**GULF, C. & S. F. RY. CO. v. CITY OF DALLAS. (No. 952—5073.)**

Commission of Appeals of Texas, Section B. April 24, 1929.

Terry, Cavin & Mills, of Galveston, Robertson, Robertson & Gannon and W. P. Donalson, all of Dallas, and Lee, Lomax & Wren, of Fort Worth, for plaintiff in error.

James J. Collins, City Atty., and Hugh S. Grady, W. Hughes Knight and H. P. Kucera, Asst. City Attys., all of Dallas, for defendant in error.

LEDDY, J. This suit was brought by defendant in error to recover from the plaintiff in error certain ad valorem taxes, together with interest and penalties thereon, alleged to be due by it for the years 1918, 1919, and 1920, which were assessed against four of its switch engines maintained in the city of Dallas for switching purposes, and for a foreclosure of the tax lien on the property in question.

The case was tried before the court, without the intervention of a jury, and judgment was rendered in favor of plaintiff in error. Upon appeal, the Court of Civil Appeals reversed the judgment of the trial court and rendered in favor of defendant in error.

The question presented for our determination is whether plaintiff in error's rolling ·stock can, by reason of its use and location within the city of Dallas, acquire a situs so as to authorize the city officials to assess the same for taxation and collect city taxes thereon.

Defendant in error claims the right to assess and collect city taxes against plaintiff in error's switch engines under the authority granted by article 8, section 5, of the state Constitution, and certain provisions contain-

ed in the special charter granted it by the Legislature of this state. The pertinent provisions of article 8, section 5, of the Constitution, read as follows:

"All property of railroad companies of whatever description, lying or being within the limits of any city or incorporated town within this state, shall bear its proportionate share of municipal taxation; * * * and, the authorities of the city or town, within which it lies, shall have power to require its rendition, and collect the usual municipal tax thereon. * * *"

The charter provisions of the city of Dallas, which affect the question under consideration, are as follows:

"Article II.

"Sec. 4. The City of Dallas shall have power to assess the property and shares of corporations, companies, banks and such other institutions as the same are now or may be assessed by the State law in such cases made and provided, which shall be cumulative of all provisions of this act, and shall have full power to enforce collection of such taxes in such manner as may be provided for herein and as by said Commission may be deemed necessary."

"Article III.

"Sec. 18. The Board of Commissioners shall have full power to provide, by ordinance, for the prompt collection of taxes assessed, levied and imposed under this charter, and are hereby authorized and to that end may and shall have full power and authority to sell or cause to be sold all kinds of property, real and personal, and may and shall make such rules and regulations, and ordain and pass all ordinances deemed necessary to the levying, laying, imposing, assessing and collecting of any taxes provided for in this charter. Unless otherwise provided by this act and ordinances passed thereunder, all property in such city liable to taxation shall be assessed in accordance with the provisions of general laws of the state in so far as applicable."

"Article VII.

"Sec. 8. All property, real and personal, shall be rendered for taxation by the owner thereof or his agent, as provided by the laws of the State for the rendition of property for assessment by the county."

"Article VII.

"Sec. 6. The Assessor and Collector of Taxes shall assess all property which for any cause has not been rendered, placing such valuation thereon as he may deem just."

The question arises: Does article 8, § 5, of the Constitution, when properly construed, refer to the actual situs of personal property for taxation, or does it merely have reference to the taxable situs of such property as that was determined at common law? We think the decision of our Supreme Court in the case of Great Southern Life Insurance Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778, decisively answers this question. In that case the constitutionality of an act of the Legislature requiring securities of an insurance company to be taxed at the domicile of the company was involved. Such act was held not to be in violation of section 11, art. 8, of the Constitution, providing that "all property * * * shall be assessed for taxation, and the taxes paid in the county *where situated.*" In discussing the question, the court said:

"The purpose of the Constitution in declaring that property should be taxed in the county where situated, was merely to define the general jurisdictional unit for the exercise of the taxing power, and to confine the exercise of that power to the subjects of taxation within that unit. It did not define what was meant by the words 'where situated.' Since it had reference to the taxing power, it evidently meant property where situated for the purposes of taxation under the general principles of law as then understood. County Treasurer v. Webb & Harrison, 11 Minn. 500 [Gil. 378]; San Francisco v. Lux, 64 Cal. 481, 2 P. 254; San Francisco v. Mackey [C. C.] 22 F. 602, 607. * * *

"Under the common law, mobilia sequuntur personam was a well-established maxim, and personal property of every description was taxable only at the domicile of its owner, regardless of its actual location. This is still the basic principle upon which the taxation of personal property rests."

In concluding its opinion, holding the act under consideration valid, the court said: "Our conclusion is that by them the Constitution is to be construed and applied, and that when the constitution declared all property should be taxed in the county where situated, it meant where situated for the purpose of taxation under the common law, the general body of the law then in existence."

■ We think the construction given article 8, § 11, in the above case, is applicable to section 5, art. 8, as the expressions "where situated" and "lying and being within" are clearly synonymous. It therefore follows that the Legislature has plenary power to determine the situs for purposes of municipal taxation of rolling stock belonging to railroad corporations.

■ Given the most favorable view, the constitutional provision is not free from ambiguity. Under such circumstances, the construction placed thereon by the Legislature during the same year in which the Constitution was adopted is persuasive as to its meaning and intent. It has been frequently determined by our Supreme Court that, where a legislative interpretation has occurred contemporaneously with the adoption of a constitutional provision, and by those who had an opportunity to understand the intention thereof, a

very strong presumption exists that such interpretation rightly construes the instrument. State v. McAlister, 88 Tex. 284, 31 S. W. 187, 28 L. R. A. 523; Dowdell v. McBride. 92 Tex. 239, 47 S. W. 524; Bahn v. Starcke, 89 Tex. 203, 34 S. W. 103, 59 Am. St. Rep. 40; Dwyer v. Hackworth, 57 Tex. 245; Ft. Worth v. Davis, 57 Tex. 225; Holmes v. State, 44 Tex. 631.

■ In addition to the legislative interpretation that the provision of the Constitution in question did not fix the situs of rolling stock for municipal taxation, where the same was actually located, we find that the Attorney General's department, charged with the duty of advising taxing authorities throughout the state, has for a long period of years given the same construction to such constitutional provision. This long-continued departmental construction is also entitled to be given weight in determining the true intent and meaning thereof. City of Denison v. Municipal Gas Co. (Tex. Sup.) 3 S.W.(2d) 794; Harris County v. Crooker, 112 Tex. 450, 248 S. W. 652.

It will be noted that the charter of the city of Dallas adopts the provisions of the General Laws dealing with the rendition and assessment of personal property for taxation. This being true, it becomes material to ascertain what such laws require of the owners of such property as to its rendition. Article 7153, R. S. 1925, provides:

"All property, real and personal, *except such as is required to be listed and assessed otherwise,* shall be listed and assessed in the county where it is situated. * * *"

Article 7168 provides:

"Every railroad corporation in this state shall deliver a sworn statement, on or before the thirtieth of April of each year, to the assessor of each county and incorporated city or town, into or through which any part of their road may run * * * specifying: * * *

"3. All personal property of whatsoever kind or character, *except the rolling stock* belonging to the company or in their possession in each respective county, listing and describing the said personal property."

The above provisions expressly exempt railroad companies from rendering any part of their *rolling stock* to incorporated cities or towns through which their lines may extend. This was a general taxation law of this state, and was therefore expressly adopted by the provisions of the charter of the city of Dallas. It was just as binding and effective on the city as those laws which granted it express authority to tax specific property. As is aptly stated by plaintiff in error, "when the present Dallas charter *adopted* the general taxation laws of this state, in so far as applicable, that charter just as clearly adopted the law which *excluded* a certain class of personal property from tax renditions to be

made to that city, as it would have adopted any law, if then in existence, which *included* the same class of property for such purposes."

■ We conclude that there is no express constitutional or statutory provision authorizing the city of Dallas to tax the rolling stock of a railway company. In the absence of such authority, it seems to be well settled that such property is taxable only at the domicile of the corporation. Appeal Tax Court v. Western Maryland R. Co., 50 Md. 274; Pacific Ry. Co. v. Cass County, 53 Mo. 17; City of Detroit v. Donovan, 127 Mich. 604, 86 N. W. 1032; Atlantic & D. Ry. Co. v. Lyons, 101 Va. 1, 42 S. E. 932; Commonwealth v. Chesapeake & Ohio Ry. Co., 118 Va. 261, 87 S. E. 622; 37 Cyc. p. 963; 26 R. C. L., p. 280, § 246.

In 37 Cyc. p. 963, the rule on this subject is thus stated: "Rolling stock and such equipment of a railroad is sometimes apportioned among the several counties through which the road passes, for the purpose of local taxation, in proportion to the mileage of the road in each county. But in the absence of a statute authorizing such a distribution, property of this kind is taxable only at the domicile of the corporation, that is, its head office or principal place of business."

26 Ruling Case Law, p. 280, § 246, announces a similar rule: "As between the different counties, cities and towns of a state, the right of the legislature to regulate the situs of rolling stock for purposes of taxation is of course plenary. When no special provision has been made it is usually held that the situs for the taxation of the rolling stock of a railroad is the city or town in which the principal office is located. * * *"

The Legislature originally (Act Aug. 21, 1876 [Laws 1879, c. 157, § 19]) subjected rolling stock of railway companies to taxation by cities and towns by the apportionment method, and subsequently repealed the same in the adoption of the Revised Statutes of 1879, and later, by the passage of the Act of March 28, 1885 (Laws 1885, c. 63), expressly exempted railway companies from the necessity of making rendition of its rolling stock to incorporated cities and towns. We think such action negatives the grant of authority to the city of Dallas which is claimed to exist in this case to tax the rolling stock of a railway company, even though the same was situated within the city on January 1st, and so remained for a definite time.

The Legislature no doubt concluded that it would not be the exercise of a sound policy to subject rolling stock of a railway company to taxation by cities and towns along their lines because of the confusion which would result from efforts of different municipalities to determine the situs of such property due to its transitory nature. While switch engines may have more permanency in their location than other rolling stock, yet all lo-

comotives belonging to a railway company are of necessity a part of its rolling stock, the location of which is subject to be changed from time to time. The situs of so much of rolling stock belonging to railway companies was indefinite and uncertain that the Legislature was justified in classing it all as a unit for purposes of taxation. It unquestionably had the authority to determine the situs of rolling stock for purposes of municipal taxation. The fact that isolated rolling stock might in some instances appear to have a fixed location is not sufficient to invalidate the classification thus made.

In the absence of a statute defining the taxable situs of this property otherwise, it was only taxable at the domicile of the railway company.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.