

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL  
ATTORNEY GENERAL

April 17, 1947

Hon. L. A. Woods, State Superintendent  
Department of Education  
Austin, Texas      Opinion No. V-113

> Re: Whether certain unpaid
> salaries of employees
> of the Department of
> Education can be the
> subject of a claims
> bill in the 50th Legis-
> lature.

Dear Sir:

You request an opinion by this Department upon the above subject matter as follows:

"Can unpaid salaries of employees of this department be made the subject of a claims bill to be presented to the 50th Legislature?"

In reply to our request therefor you have furnished us the following additional information with respect to these particular employees. .

"Seventeen employees are involved for salaries for the month of January, 1947, and fifteen employees are involved for the period February 1 through February 11, 1947.

"I am attaching a schedule giving itemized information on these employees, their salaries and titles (which indicates their duties). These employees are extra to those regular employees authorized under the General Appropriation Act.

"The School Lunch Division was established as a result of Governor Stevenson's designating this Department to administer the National School Lunch Program in June, 1946. Under the program Texas received

over $3,500,000.00 to be used in subsidizing school lunch programs in the schools of this State,but none of these funds can be used to pay administrative costs.

"On April 1, 1946, Governor Stevenson charged this Department with the duty of inspecting school plans and plants for architectural and engineering safety. The School Plant Division was established to perform this function.

"In both of the above cases a deficiency appropriation was granted to finance the costs until August 31, 1946. On September 1, 1946, the costs of these programs were paid from contingent funds granted in the General Appropriation Act to the 'Main Division' of this Department. On January 1, 1947, these contingent funds were exhausted to the extent that the salaries of these employees could not be paid. We could not seek a deficiency appropriation because a small balance was in this appropriation.

"As soon as possible after the Fiftieth Legislature convened, an emergency appropriation was requested. This Bill, S. B. 44, was signed and made a law on February 12, 1947. Since this bill could not be made retroactive and since no other funds were on hand to pay these salaries, we have requested the subject opinion as to the procedure for paying the salaries of these employees who have rendered bona fide services to the State."

At the threshhold of the discussion we are met with the question whether or not the persons involved are in legal contemplation "employees" of your department. In other words, whether or not you were authorized under the law of this State, to engage such persons for the work to which they were assigned. It is necessary that this question be resolved in the affirmative before the matter of the right to compensa-

sation is even considered. If such persons have not been employed in pursuance of law, they have no claim upon the State for compensation whatsoever.

There is no express statute giving the State Superintendent or the Head of the Department of Education authority to administer the $3,500,000.00 of the National School Lunch Program. Neither is there such express authority for the assumption by the department of the duty to inspect the school plans and plants for architectural and engineering safety. If such authority in either case exists, it must be found elsewhere.

We think the authority is found elsewhere as we shall attempt to show.

Section 1 of Article VII of the Constitution declares:

"A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the legislature of the State to establish and make suitable provisions for the support and maintenance of an efficient system of public free schools."

In obedience to this constitutional mandate, the Legislature created the office of State Superintendent of Public Instruction. Article 2655 of the Revised Civil Statutes is as follows:

"There shall be elected at each general election, a State Superintendent of Public Instruction, who shall hold his office for a term of two years. The Superintendent shall take the official oath and shall perform such duties as may be prescribed by law."

The succeeding article (2656) declares:

"The State Superintendent shall be charged with the administration of the school laws and a general superintendency of the business relating to the public schools of the State, * * *."

There are many other specific requirements for the exercise of his general power of supervising the public schools of the State.

You advise us that Governor Stevenson had designated your department to administer the National School Lunch Program, and likewise had charged your department with the duty of inspecting school plans and plants for architectural and engineering safety.

Section 1 of Article IV of the Constitution declares that the Governor "shall be the Chief Executive Officer of the State." Section 10 of the same article reposes in the Governor the mandatory duty to "cause the laws to be faithfully executed", and moreover, to conduct, "in person, or in such manner as shall be prescribed by law, all intercourse and business of the State * * * with the United States."

It cannot be said that the administration of the school-lunch programs and the inspection of school plans and plants for architectural and engineering safety are not within the statutory powers of the Superintendent of Public Instruction. Nor can it be denied that the $3,500,000.00 aid supplied by the United States was directly conducive to the accomplishment of the cherished policy of our founding fathers as indicated in the Constitution hereinabove quoted.

We assume that the contribution of the United States to the purpose named has been received and has been expended and is being expended in a way satisfactory to the United States, and that the public schools have received and are receiving the exclusive benefits thereof. This is a matter into which we are not called upon to inquire. It is a fait accompli.

We assume further that you have employed only such persons and in such numbers as in your official discretion were necessary - indispensable - to accomplish the purposes for which they were employed.

Upon these basic grounds and what we conceive to be sound legal reasons, we are of the opinion the persons involved were legally employed by you in the just exercise of your office, as Supervising Head of the Public School system of the State.

Next, we are concerned with the question of whether or not there was in existence at the time you engaged these employees a law that would authorize the appropriation of money from the State Treasury to pay their compensation.

Section 44 of Article III of the Constitution prohibits the Legislature from appropriating any money out of the State Treasury without a pre-existing law authorizing the claim therefor. This requirement for "pre-existing law" is mandatory and is without exception. There must have been such a law at the time the employees were chosen by you. We think there was such pre-existing law ample in scope to authorize an appropriation.

The source of the "pre-existing law" is not limited to the Constitution and statutes, but on the other hand includes the common-law as contradistinguished from the written law. Moreover, the term is not limited to the expressed law but such pre-existing law may and does exist where it is a necessary implication by constitution or statute. It is an elementary rule of statutory construction that whatever is necessarily implied therein is as much a part of the instrument as though it had been expressly stated. The real meaning of the law is the intention of its makers, and when that intention is discovered, whether by expression or by implication, it is the law in its true sense.

We have already shown that the Constitution and statute clothe you with authority to engage the necessary - indispensable - employees in performance of your official duties as State Superintendent of Public Instruction. While such pre-existing law does not fix the number of such employees, nor the compensation to be paid to them, it does create the authority for the employment of the necessary number and at the reasonable or necessary compensaion incident thereto. It is this class of pre-existing law we are here dealing with.

It cannot be soundly argued that subsequent appropriations in pursuance of such long standing pre-existing authority would be retrospective in the constitutional sense forbidding such laws. In truth, all appropriation acts are in their nature retrospective

because they are based solely upon the existence of a "pre-existing law". They are all, however, prospective in their nature in the constitutional sense in that the actual taking of the money out of the Treasury follows, and does not precede the appropriation. Our holding herein announced is consonant with sound legal reasoning and moreover is clearly within all constitutional limitations.

Finally, our construction of the Constitution and statutes is in keeping with the construction thereof in Senate Bill No. 44 of the present Session as mentioned in your letter. It makes specific appropriation for the precise purposes involved in your inquiry. If there is no pre-existing law for the employment, the Governor's deficiency warrant was improvidently allowed and paid, the appropriation in Senate Bill 44 is void, and any further appropriation in the general appropriation bill will be unauthorized.

While contemporaneous construction of another department of the government is not conclusive, it is yet highly persuasive and entitled to great weight in the judicial determination. See Great Southern Life Insurance Co. vs. the City of Austin, 243 S.W. 778; Walker vs. Meyers, 266 S.W. 499; Collingsworth County vs. Allred, 40 S.W. (2d) 13; Jones vs. Williams 45 S.W. (2d) 130; Gulf C. & S.F. Railway Co. v. City of Dallas, 16 S.W. (2d) 292; Galveston Causeway Construction Co. v. Galveston H. & S.A. Railway Co., 284 Fed. 137, cert. den., (U.S.) 67 Law Ed. 1212.

Your having discharged your official duty and exercised your official discretion in determining the number of employees necessary and the compensation to be paid to them, accomplishes the constitutional requirement prescribed as a condition to the appropriation of compensation from the Treasury of the State. We are not to be understood as holding that the Legislature in making such appropriation is bound by your official action as to the necessity for employees, the number thereof, or the amount of compensation to be paid. If the Legislature in its discretion should determine either of such matters other than you have determined them, its determination would be conclusive, for there is no other way known to the law to take money out of the Treasury of the State, than by legislative appropriation.

If, for any reason, an employee of your department has performed his duties and has not been paid, and there is no available fund from which he may now be paid, there is no reason why such claim may not be embraced in the usual Miscellaneous Claims Appropriation Bill. There is no constitutional limitation upon the power of the Legislature to make an appropriation from the State Treasury in payment of a valid claim against the State in any particular form or at any particular time. It may do so at any time, with possible special exceptions not pertinent here.

This is not a case of an appropriation made in connection with the authority to incur a liability which would operate to foreclose for all time the question of a further appropriation as in the instances of the purchase of materials, construction of buildings, and the like. In such cases the very act of the Legislature creating a pre-existing law for state liability contains the limitation of the power to contract beyond the sum there appropriated. It is at once a power and a limitation upon the extent of the power.

It is important to notice the two types of pre-existing law. Section 44 of Article III of the Constitution is the basis for the distinction between these types. The section first forbids the Legislature to provide for extra compensation to any officer, agent, servant, or public contractors, after public service shall have been performed or contract entered into for the performance of the same, and second forbids the employment of anyone in the name of the state, unless authorized by pre-existing law. The distinguishing feature is this, in cases of contract as for purchases or construction, the pre-existing law and the necessary appropriation are embodied in one bill, whereas in the case of an employee the authority to employ on behalf of the State is usually found in the constitution or statute long prior to the specific appropriation for compensation. The first class of cases is illustrated by Nichols vs. State, 32 S.W. 452 ("The claim of an appellant to the extent of about $10,000 that grew out of the additional contract for the extra service was in excess of the amount provided by law for the construction of the building; hence there was an absence of a pre-existing law for the construction of the building; hence there was an absence of a pre-existing law upon which to base this claim"),

and State vs. Haldeman, 163 S.W. 1020 ("It is true, in the Nichols case supra, the act expressly provided that the amount to be expended for the building therein provided for should not exceed the sum of $40,000; but we hold that, when the Legislature appropriates a specific amount for a public building, this is equivalent to limiting the amount to be expended on such building to the amount named in the appropriation bill").

This class of cases is further illustrated by Fort Worth Cavalry Club vs. Sheppard, 83 S.W. (2d) 660, in which case the Supreme Court applied the principles announced in the Nichols and Haldeman cases to a situation where the Adjutant General of the State entered into a lease contract with the Fort Worth Cavalry Club for certain grounds for the use of the Texas National Guard, saying, "When we come to construe such statutes (the powers of the Adjutant General) together with the above quoted appropriation act, it is reasonably clear to us that the Adjutant General had the implied power, within the reasonable limitations of such appropriation, to make contracts for the period and purposes covered thereby, and no further. This holding renders the contract illegal."

The second class of "pre-existing law", and by far the larger class, consists of general legislative authority giving the officer, department, institution, or other agency of the State the power to employ necessary assistants or employees.

Your request presents a situation where the Head of a department has engaged necessary employees essential to carry on his statutory duties, and the employees have performed the contemplated service and have received therefor no compensation. The question is closely analogous to that determined by the Supreme Court in Lightfoot v. Lane, 140 S.W. 89, where it is said:

"This provision of the Constitution (Article VIII, § 6), 'No money shall be drawn from the treasury but in pursuance of specific appropriations made by law,' does not apply to relator's warrant, which was not a payment; nor did the issuing of

the warrant draw money out of the treasury. State v. Wilson, 71 Tex. 300, 9 S. W. 155. The warrant could not be paid until appropriation should be made, if not theretofore made. Relator seeks only a writ of mandamus, 'commanding and requiring respondent to draw and deliver to relator a warrant upon the Treasurer of the State of Texas for the sum of one hundred sixty-six and 66/100 dollars in payment of the salary of relator as aforesaid, and that relator have judgment for all costs and for general relief.'

"The acts of the Governor charged to have been unlawfully done in vetoing and mutilating the appropriation bill, if true, are wholly without relevancy to the right of relator to the warrant. The Secretary of State, who is by law required to cause the bill to be printed correctly, is not a party to this proceeding, neither is the Treasurer, who must cash the warrant; hence no judgment can be entered against either of them. Any decision of those matters would be uncalled for; therefore, this court will not intimate an opinion as to either.

"It is therefore ordered that the clerk of this court issue the writ of mandamus as prayed for by relator, directed to W. P. Lane, Comptroller of Public Accounts of the State of Texas, commanding him to issue and deliver to relator, Jewel P. Lightfoot, a warrant upon the Treasurer of the State of Texas for the sum of $166.66, for salary due relator as Attorney General of the State of Texas for the month of September, 1911, and that the respondent, W. P. Lane, pay all costs of this proceeding. * * *"

It is true, in the case of the Attorney General, the amount of the salary was fixed by the Constitution itself, but this can make no difference for such fixing by the Constitution operated only as a limitation upon the power of the Legislature, - not a prohibition against all compensation. In other words, without such limitation the Legislature is free to appropriate what it deems to be reasonable compensation for the services performed.

If the Legislature should fail to make any appropriation for any officer or employee, of course, no compensation could be paid until such appropriation has been made. Suppose, to illustrate, the Legislature should fail to make an appropriation to the Executive Department for assistants, stenographers or employees whatsoever, could it be thought for a moment that the Governor could not employ the indispensable number of secretaries and stenographers to carry on the work of the State? The business of the State must go on. There is no express authority given to the Governor to employ secretaries, stenographers, and the like. Such authority is undoubtedly implied in the Constitution and statutes creating the office and defining the duties of the Governor. It cannot be supposed that the framers of the Constitution or any Legislature since that time ever contemplated or intended that the Governor function in the discharge of his duties without necessary personnel. The power to employ personnel is a common sense, inevitable conclusion by the necessary implications of the Constitution and statutes. Suppose again, a fire should gut the Senate Chamber in the Capitol while the Legislature is in session. There is no constitutional or statutory authority in express form for the State to be made liable for an assembly place until the chamber could be restored. It is hardly thinkable that the State could not pay for the rental of an appropriate assembly chamber to house the Senate.

We answer your question in the affirmative.

## SUMMARY

The salaries of employees of the Department of Education employed to administer the National School Lunch Program, and the School Plant Division of the Department, for inspecting school plans and plants for architectural and engineering safety, who have not been paid their salaries, may be paid by an appropriation to be contained in the Miscellaneous Claims Bill if allowed and included therein by the Legislature.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED: Apr.17,1947

By

*Price Daniel*
ATTORNEY GENERAL

*Ocie Speer*
Ocie Speer
Assistant

OS/acm/lh