The CITY OF HOUSTON, Appellant,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, Appellee.

No. 849.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Dec. 12, 1973.

Rehearing Denied in Part and Granted in Part Jan. 9, 1974.

Second Rehearing Denied Jan. 30, 1974.

William A. Olson, City Atty., Jay D. Howell, Jr., Robert J. Collins, James B. Cameron-Stuart, Frank B. Burke, Asst. City Attys., Houston, for appellant.

Frank G. Harmon, E. R. Fleuriet, Fred W. Fulton, Baker & Botts, Houston, for appellee.

CURTISS BROWN, Justice.

This is a tax suit.

The case involves the construction of constitutional provisions and statutes dealing with the taxation of railroad rolling stock. The question presented is whether the "mobilia" rule applies so as to permit a railroad's domiciliary city to tax *all* of the railroad's rolling stock which is attributable to the state.

Appellant, City of Houston (the City), brought this action on behalf of itself and for the use and benefit of the Houston Independent School District against appellee, Southern Pacific Transportation Company (the Company), for allegedly delinquent ad valorem taxes on the Company's rolling stock. By special exceptions, the Company attacked the City's right to levy such a tax. The trial court sustained the exceptions and dismissed the suit. The City has appealed.

The City not only attacks the trial court's ruling on the merits but also asserts that sustaining the exceptions amounted to sustaining a general demurrer in violation of Texas Rules of Civil Procedure, rule 90. The City also attacks the judgment of the trial court in taxing court costs against the City.

Although the Company's exceptions went to the substance of the City's claim rather than the form of its petition, such exceptions *specifically* show the exact nature of its objection. The exceptions in this case were not "speaking" exceptions and directly attacked the right of a city to levy such taxes or to maintain this action based upon specific reasons set forth in such exceptions. A special exception can go to the substance or form of the pleading excepted to. The degree of specificity determines a special exception as contrasted to a general demurrer. The City's procedural point is overruled.

The Texas Constitution Vernon's Ann. St. deals with the basic scheme for rail-road taxation in 'Article 8, sections 5 and 8:

"§ 5. Railroad property; liability to municipal taxation

Sec. 5. All property of railroad companies, of whatever description lying or being within the limits of any city or incorporated town within this State, shall bear its proportionate share of municipal taxation, and if any such property shall not have been heretofore rendered, the authorities of the city or town within which it lies, shall have power to require its rendition, and collect the usual municipal tax thereon, as on other property lying within said municipality.

§ 8. Railroad companies; assessment and collection of taxes

Sec. 8. All property of railroad companies shall be assessed, and the taxes collected in the several counties in which said property is situated, including so much of the roadbed and fixtures as shall be in each county. The rolling stock may be assessed in gross in the county where the principal office of the company is located, and the county tax paid upon it, shall be apportioned by the Comptroller, in proportion to the distance such road may run through any such county, among the several counties through which the road passes, as a part of their tax assets."

Article 8, sec. 1 provides in part: "Taxation shall be equal and uniform." Article 8, sec. 11 provides:

"§ 11. Place of assessment; value of property not rendered by owner

Sec. 11. All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated, but the Legislature may, by a two-thirds vote, authorize the payment of taxes of non-residents of counties to be made at the office of the Comptroller of Public Ac-

counts. And all lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer."

In 1876, the legislature enacted the Act of August 21, which in section 18 set the tax situs for the real estate, superstructure, buildings, and tools of railroads in each county and incorporated town into which any part of their road runs or in which they own real estate. Tex.Laws 1876, ch. 157 § 18, at 280, 8 H. Gammel, Laws of Texas 1116 (1898). Section 19 set the tax situs for rolling stock in each county and incorporated town into which any part of their road runs. Tex.Laws 1876, ch. 157 § 19, at 280, 8 H. Gammel, Laws of Texas 1116 (1898). In the Revised Statutes of 1879, section 18 remained unchanged as Article 4686, but section 19 was amended to omit all reference to incorporated towns, as Article 4687. Tex.Civ.Stat. art. 4686, 4687 (1879). Article 4686 was amended by the Act of March 28, 1885, Tex.Laws 1885, ch. 63 § 1, at 61, 9 H. Gammel, Laws of Texas 681 (1898), and by the Act of May 1, 1909, Tex.Laws 1909, ch. 38 § 1 at 373, to reach its present form expressly excluding railroad rolling stock.

These two statutes now read:

"Art. 7168. (7524) (5082) Assessment by railroads

Every railroad corporation in this State shall deliver a sworn statement, on or before the thirtieth day of April of each year, to the assessor of each county and incorporated city or town, into or through which any part of their road may run or in which they own or are in possession of real estate, a classified list of all real estate owned by or in possession of said company in said county, town or city, specifying:

1. The whole number of acres of land, lot or lots, exclusive of their right of way and depot grounds, owned, pos-

sessed or appropriated for their use, with a valuation affixed to the same.

2. The whole length of the railroad and the value thereof per mile, which valuation shall include right of way, roadbed, superstructure, depots and grounds upon which said depots are situated, and all shops and fixtures of every kind used in operating said road.

3. All personal property of whatsoever kind or character, *except the ·rolling stock* [1] belonging to the company or in their possession in each respective county, listing and describing the said personal property in the same manner as is now required of citizens of this State. Acts 1909 p. 373.

Art. 7169. (7525) (5083) Railroads to return sworn statements

Every railroad corporation in this State shall deliver a sworn statement on or before the first day of April of each year, to the assessor of the county in which its principal office is situated, setting forth the true and full value of the rolling stock of said railroad, together with the names of all the counties through which it runs, and the number of miles of roadbed in each of said counties; and said statement shall be submitted to the board of equalization of the county in which its principal office is situated for review, on the first Monday in June in each year, or as soon thereafter as practicable; and such board shall certify such final valuation when made without delay to the Comptroller, who shall proceed at once to apportion the amount of such valuation among the said counties in proportion to the distance such roads shall run through any such county, and shall certify such apportionment to the assessors of such counties, and the same shall constitute part of the tax assets of such counties; and the assessor of each of said counties shall list and enter the same upon the rolls for

---

1. All emphasis is added unless otherwise indicated.

taxation as other personal property situated in said county. And said railroad corporation shall also report in a separate sworn statement all rolling stock operated by it, under rental, hire, lease or other form of contract, which it does not render for taxation, giving the true and full value of such rolling stock and the amount paid or promised to be paid for rental, hire, lease or use under other form of contract, together with the name of person, firm, corporation or association owning such rolling stock, and together with the postoffice address of such person or firm, or if it be a corporation or association, then the city, county and State of its principal office; and if from said statement it appears that said rolling stock belongs to any person residing in this State, or to any firm doing business in this State, or to any corporation or association organized under the laws of this State, then said statement shall be certified by the tax assessor to whom it is made to the tax assessor of the county in which such person lives, or such firm does business, or such corporation or association has its principal office; and said statement shall be, by the tax assessor to whom it is certified, submitted to the board of equalization of the county for review, and the same shall be equalized by the board of equalization of such county, and certified to the Comptroller, and apportioned by the Comptroller in the same manner as other rolling stock is certified and apportioned under the preceding provisions of this article; and, if it appears from said statement that the person, firm, corporation or association owning such rolling stock is a non-resident of this State, then said statement shall be submitted to the board of equalization of the county in which the principal office of the railroad company using the same under rental, hire, lease or other form of contract is situated, which statement shall be reviewed by said board of equalization, and said property assessed against the owner, and certified

to the Comptroller, and the valuation apportioned against said owner by the Comptroller, in the same manner as rolling stock belonging to the railroad corporation furnishing the list. Acts 1885 p. 30; Acts 1907 p. 192; G.L. vol. 9 p. 650."

The pivotal question on this appeal is the significance of the 1879 amendment omitting all reference to incorporated towns in what is now Article 7169 and the express exclusion of rolling stock from what is now Article 7168.

■ A number of cases, as well as a number of opinions by the Attorney General, touch upon the problem. With respect to the Attorney General's opinions, it is settled that while such opinions do not have the force of law they are entitled to be given considerable weight in determining the proper construction of statutes. None of the opinions that we have found or that has been brought to our attention, however, involved a tax on rolling stock of a railroad by the city of domicile. For that reason, we do not find the opinions of the Attorney General persuasive in this particular case. The case law is also somewhat conflicting and not all statements of the courts can be reconciled.

City of Tyler v. Coker, 58 Tex.Civ.App. 605, 124 S.W. 729 (Texarkana 1910, no writ), was an appeal by the city from a judgment against it in favor of Coker who claimed commissions for assessing the rolling stock of the Cotton Belt Railway Company. He claimed that he was the assessor and collector of the city and that the Cotton Belt's principal office and place of business was Tyler. The Court felt that the judgment was fundamentally erroneous for the reason that Coker had obtained a judgment for his commission for assessing the *entire* rolling stock of the Cotton Belt. After citing Article 8, sec. 5 of the Constitution, the Court stated:

"These provisions would appear to change the rule which seems to be adopted in some jurisdictions, of making the

rolling stock of railroad companies taxable at the place of the corporate domicile. The terms 'lying or being within the limits of any city or incorporated town,' etc., when applied to the tangible and movable personal property, would hardly be considered as meaning other than that the property must be actually physically within the limits of the municipality where it is sought to be taxed, in order to be subject thereto." 124 S.W. at 730.

The Court also said:

"The terms of our Constitution are as potent in excluding from the taxing powers of cities and towns personal property not 'lying and being' within their limits, as in conferring the right to tax that which is. Under section 8 above quoted, Smith county, in which the city of Tyler is located, and of which it is the county seat, is entitled only to tax that portion of the value of the entire rolling stock of the Cotton Belt Railway Company as is measured by the proportion which the mileage in that county bears to the entire mileage of the road in all the counties in this state. We know that the mileage in Smith county is much greater than in the city of Tyler. It would be charging the framers of our Constitution with a grievous oversight to so construe the language they employed in sections 5 and 8 as limiting the right of taxation as to counties to only a portion of the rolling stock and as permitting cities located within such counties the right to tax for municipal purposes the entire rolling stock. . . . So far as our observation has extended, this case presents the only instance in which a city has undertaken to assess for taxation the rolling stock of an entire railroad solely on account of the fact that the general office of the corporation was located within its limits. However, it is but just to say that we gather from the record and brief of counsel for the city that while the assessment was made the tax was not collected. It appears to have been the uniform construction adopted throughout the state by the officers and departments charged with the collection of municipal taxes, that cities and towns had no such right. Such a course of conduct, after the lapse of so many years, is not without force in determining the construction that should now be adopted by the courts."

Coker's judgment was reversed and remanded.

State v. Houston & T. C. Ry. Co., 209 S.W. 820 (Tex.Civ.App.—Galveston 1918, no writ), was a suit instituted by the State against the Houston and Texas Central Railway Company to recover taxes alleged to be due and payable to Harris County for the use and benefit of the Harris County Ship Channel Navigation District. The taxes sought to be collected included the full value of the rolling stock as apportioned to the county by the State Comptroller. The only question presented was whether the Navigation District had the power to tax the value of the rolling stock as intangible property of the railroad, as fixed by the State Tax Board and apportioned and certified to the Tax Assessor of Harris County for county taxation purposes. During the course of its opinion the Court said:

"As to rolling stock of railway companies, the Legislature is not only not prohibited from fixing situs for taxation and apportioning value, but is expressly authorized to do so, the apportionment to be among the 'counties' through which the road runs in proportion to distance run through the 'county.'" 209 S.W. at 823.

It further stated:

"As to rolling stock, our courts have held that they should take cognizance of the fact that it is required to be constantly in actual use all along the line of road. The Constitution, and the statute passed under its provision, both recognize, in the method adopted for its taxation, that it has no actual situs as a

whole. The record in this case does not disclose that any portion of the property in question was in Harris county as of January 1st of any year for which a tax is sought to be collected." 209 S.W. at 823.

It concluded:

"The Constitution and laws of Texas restrict and limit the payment of taxes on the intangible assets and rolling stock of railway companies to the 'state,' and the 'counties' through which the road runs, and do not authorize the assessment of same for taxes by, or for the use of, any district created by the voluntary act of the residents of said district." 209 S.W. at 824.

Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778 (1922), did not involve railroad taxation. The purpose of the suit was to recover taxes alleged to be due by Great Southern on securities deposited by it under the laws of the state with the State Treasurer. Judgment was rendered by the trial court in favor of Great Southern but reversed and rendered by the Court of Civil Appeals. In an opinion by Chief Justice Cureton the Supreme Court held that the Constitution is declaratory of common law principles and that such common law, insofar as not inconsistent with legislation or the Constitution, is to be applied. The Constitution in declaring that property shall be taxed "where situated" did no more than declare the common law rule. In Great Southern the Court held that the common law doctrine of "mobilia sequuntur personam" established that personal property of every description is taxable only at the domicile of its owner, regardless of its actual location.

The Supreme Court held, "This is still the basic principle upon which the taxation of personal property rests." 243 S.W. at 781. The Court recognized that certain classes of personal property may have a situs for taxation where they are permanently kept separate and apart from the domicile of the owner. It was also recognized that the legislature had the power to fix a "legislative" situs. The Court held that the legislative act fixing the taxable situs at the domicile of the company was constitutional, and it therefore reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the trial court.

Gulf, C. & S. F. Ry. Co. v. City of Dallas, 16 S.W.2d 292 (Tex.Com.App.1929, jdgmt adopted), is relied upon by both the City and the Company. Perhaps both have reason to find comfort in it. The suit was brought by Dallas to recover from the railroad ad valorem taxes assessed against four of its switch engines maintained in Dallas for switching purposes. In a judge-tried case the trial court rendered judgment in favor of the railroad. The Court of Civil Appeals reversed and rendered judgment in favor of Dallas. The Commission of Appeals posed the question:

"Does article 8, § 5, of the Constitution, when properly construed, refer to the actual situs of personal property for taxation, or does it merely have reference to the taxable situs of such property as that was determined at common law?" 16 S.W.2d at 293.

After citing Great Southern Life Ins. Co. v. City of Austin, *supra,* the Court stated:

"We think the construction given article 8, § 11, in the above case, is applicable to section 5, art. 8, as the expressions 'where situated' and 'lying and being within' are clearly synonymous. It therefore follows that the Legislature has plenary power to determine the situs for purposes of municipal taxation of rolling stock belonging to railroad corporations." 16 S.W.2d at 293.

Placing emphasis on the exception contained in sub-section 3 of Article 7168, the Court further held:

"The above provisions expressly exempt railroad companies from rendering any part of their rolling stock to incor-

porated cities or towns through which their lines may extend. This was a general taxation law of this state, and was therefore expressly adopted by the provisions of the charter of the city of Dallas. It was just as binding and effective on the city as those laws which granted it express authority to tax specific property. As is aptly stated by plaintiff in error, 'when the present Dallas charter *adopted* the general taxation laws of this state, in so far as applicable, that charter just as clearly adopted the law which *ex-cluded* a certain class of personal property from tax renditions to be made to that city, as it would have adopted any law, if then in existence, which *included* the same class of property for such purposes.'

We conclude that there is no express constitutional or statutory provision authorizing the city of Dallas to tax the rolling stock of a railway company. In the absence of such authority, it seems to be well settled that such property is taxable only at the domicile of the corporation." 16 S.W.2d at 294.

The Court also held:

"The Legislature originally . . . subjected rolling stock of railway companies to taxation by cities and towns by the apportionment method, and subsequently repealed the same in the adoption of the Revised Statutes of 1879, and later, by the passage of the Act of March 28, 1885 . . ., expressly exempted railway companies from the necessity of making rendition of its rolling stock to incorporated cities and towns. We think such action negatives the grant of authority to the city of Dallas which is claimed to exist in this case to tax the rolling stock of a railway company, even though the same was situated within the city on January 1st, and so remained for a definite time.

The Legislature no doubt concluded that it would not be the exercise of a sound policy to subject rolling stock of a railway company to taxation by cities and towns along their lines because of the confusion which would result from efforts of different municipalities to determine the situs of such property due to its transitory nature. While switch engines may have more permanency in their location than other rolling stock, yet all locomotives belonging to a railway company are of necessity a part of its rolling stock, the location of which is subject to be changed from time to time. The situs of so much of rolling stock belonging to railway companies was indefinite and uncertain that the Legislature was justified in classing it all as a unit for purposes of taxation. It unquestionably had the authority to determine the situs of rolling stock for purposes of municipal taxation. The fact that isolated rolling stock might in some instance appear to have a fixed location is not sufficient to invalidate the classification thus made.

In the absence of a statute defining the taxable situs of this property otherwise, it was only taxable at the domicile of the railway company.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court affirmed." 16 S.W.2d at 294–295.

The City emphasizes the language "such property is taxable only at the domicile of the corporation." The Railroad emphasizes the holding that the legislature concluded that it would not be sound to subject rolling stock of the railway company to taxation by cities and towns along their lines because of the confusion which would result from efforts of different municipalities to determine the situs of the property.

State v. Texas & P. Ry. Co., 62 S.W.2d 81 (Tex.Com.App.1933, jdgmt adopted), is hard to reconcile with State v. Houston & T. C. Ry. Co., *supra,* and is difficult to bring within Gulf, C. & S. F. Ry. Co. v. City of Dallas, *supra.* The state, suing for the use and benefit of the El Paso-Hud-

speth County Road District, sought to recover from the Texas & Pacific and several other railroads taxes on rolling stock as an intangible asset of those companies, in accordance with valuation as made by the authorities prescribed by law and apportioned by them to El Paso County. The trial court gave judgment for the state for the use and benefit of the road district, and the Court of Civil Appeals reversed that judgment and rendered judgment for the railroad companies. The Commission of Appeals held:

> "As regards the value of the rolling stock which, under the provisions of article 8, § 8, of the Constitution, and of article 7169 of the statutes, was apportioned by the state comptroller to El Paso County, the situs for taxation purposes became fixed in that county. The reasons upon which this conclusion is based are substantially the same as those upon which our conclusion respecting intangible assets is based. In both instances, the situs became fixed in the county at large, but not, of course, in any particular portion of the county.
>
> We recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court, be reversed and that the judgment of the trial court be affirmed." 62 S.W.2d at 82.

As other forms of land and water transportation developed, the courts began to become concerned with nonrailroad "rolling stock", such as water and motor vehicles. City of Fort Worth v. Southland Greyhound Lines, 123 Tex. 13, 67 S.W.2d 361 (Tex.Com.App.1933, opinion adopted), is such a case. Southland was a domestic corporation having its domicile in San Antonio. Fort Worth levied taxes on four buses on the grounds it appeared that that average number was kept by Southland in the City of Fort Worth in carrying out its business. The Court of Civil Appeals certified the following questions to the Supreme Court:

"(1) 'Can the motor busses of the plaintiff that are necessary to be kept and used in the City of Fort Worth for the purpose of maintaining its runs and schedules be taxed by the City of Fort Worth, or must they be taxed in the City of San Antonio, the admitted domicile and principal place of business of appellee?

(2) 'Did the Board of Equalization of the City of Fort Worth have the power to add the plaintiff's motor busses to its tax roll?'" 67 S.W.2d at 361–362.

The Commission of Appeals approved the opinion of the Court of Civil Appeals reported at 123 Tex. 13, 67 S.W.2d 354 and recommended that the certified question be answered in accordance with the opinion of the Court of Civil Appeals which held as follows:

> "We conclude that the situs for taxation purposes of the rolling stock or busses of the appellee was in San Antonio, Bexar county, and that the tax assessor or the board of equalization had no authority to assess the tax in Fort Worth." City of Fort Worth v. Southland Greyhound Lines, 67 S.W.2d 354, 360 (Tex. Civ.App.—Fort Worth 1931).

In Greyhound Lines, Inc. v. Board of Equalization, 419 S.W.2d 345 (Tex.Sup. 1967), the Court was faced with an extension of the problem posed by Southland Greyhound. Suit was brought to declare void ad valorem tax assessments made by Fort Worth and its school district on certain buses for certain years. Both parties filed motions for summary judgment. The trial court granted that of the Board of Equalization. The Court of Civil Appeals reversed that judgment and remanded the cause for trial of what it held to be fact issues. The Supreme Court reversed the judgment of the Court of Civil Appeals and affirmed the judgment of the trial court. It appeared that Greyhound's principal place of business in Texas was Fort Worth. An apportionment formula was used by officials of the city and district

for arriving at the value at which the buses were assessed as authorized by law. In the Court of Civil Appeals, Greyhound claimed that its buses had no situs in the city or district. It also claimed that the trial court erred in adopting the apportionment formula. The Court of Civil Appeals held that the buses owned by foreign corporations and operated in interstate commerce in Texas could acquire a tax situs here and that such tax could be imposed on the basis of equitable apportionment calculated fairly and in good faith in consideration of the presence or use within, as compared with presence or use both within and without, the state. The Court of Civil Appeals therefore reversed the trial court's judgment and remanded the cause to the trial court to determine the proper amount of taxes due by Greyhound.

In the Supreme Court, Greyhound contended that its buses did not have a tax situs in Fort Worth and that its buses were constructively situated at its corporate domicile in California under the "mobilia" rule.

Writing for the Court, Chief Justice Calvert stated:

> "Greyhound is correct, of course, in asserting that its buses do not come within the exception to *mobilia* relating to intangibles. It is also correct in asserting that there is no Texas constitutional or statutory provision expressly fixing a tax situs for rolling stock of foreign motor bus corporations which travels and is used in Texas in interstate operations, *as there is for rolling stock of railroads.* See Tex.Const. Art. VIII, Sec. 8 and Art. 7169." 419 S.W.2d at 348.

The Court went on to hold:

> "Texas has adopted the *mobilia* rule as the basic rule for locating the tax situs of tangible personal property at the domicile of the owner. That was the rule of the common law; and the provisions of Sec. 11, Art. VIII of the Constitution

and of Art. 7153 requiring that property be taxed 'where situated' are but declarative of the common law, and mean where the property is situated for tax purposes under principles of common law. Great Southern Life Insurance Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778 (1922). But the *mobilia* rule is a legal fiction, Guaranty Life Ins. Co. v. City of Austin, 108 Tex. 209, 190 S.W. 189 (1916); and as one writer, quoting liberally from courts of highest authority, has put it:

>> 'It was "intended for convenience, and not to be controlling where justice does not demand it." It is not of universal application, does not rest on any constitutional foundation, and gives way before express law. As has been said, "the fiction that personal property follows the domicile of its owner" cannot be allowed "to obscure the truth." "This rule," it has been well said, "is subject to so many exceptions and limitations that it is quite as liable to mislead as to furnish a correct guide, when considered alone." Cooley, The Law of Taxation, § 440 (4th ed. 1924).

> To acquire a tax situs of its own in a particular state, it is not necessary that tangible personal property be situated in the state with absolute permanency, or that it be there situated with no intention on the part of the owner to remove it; it is enough to fix tax situs that its situation have a degree of permanency which will distinguish it from property which is in the state on a purely temporary or transitory basis." 419 S.W.2d at 349.

Judge Calvert went on to hold:

> "Once the conclusion is reached that the buses have a tax situs in this State, the question of local tax situs can have only one logical answer. In the absence of legislation to the contrary, the local tax situs of rolling stock owned by a corporation is at the place where the corporation maintains its principal office or place of business. This court has so

held with respect to rolling stock of a domestic corporation, . . . ; and the rule is equally applicable to rolling stock of foreign corporations." 419 S.W.2d at 350.

After so holding, the Supreme Court concluded that the city could adopt an apportionment formula as a basis for taxing Greyhound buses and that the formula adopted met the standards of fairness and reasonableness required by decisions of the Supreme Court of the United States. Therefore, the Court reversed the judgment of the Court of Civil Appeals and rendered judgment that Greyhound take nothing.

 We agree with the City that under these cases Texas applies the "mobilia" rule so as to fix the tax situs at the domicile of the corporation unless: (1) there is a constitutional or legislative situs, (2) the property is tangible and has acquired a permanent actual situs apart from the owner's domicile, or (3) the property is intangible and has acquired a business situs other than that of the owner's domicile. We further agree that the Texas Constitution provides that all taxation shall be equal and uniform and that all property shall be taxed in proportion to its value. Nevertheless, we hold that a constitutional (Tex.Const. art. VIII, sec. 8) and statutory (Tex.Rev.Civ.Stat.Ann. art. 7169 (1960)) situs for railroad rolling stock is fixed in counties only. It is especially significant to us that what is now Article 7169 originally included cities; however, the legislature amended the statute so as to eliminate incorporated towns. The fixing of the situs of ad valorem taxes on the basis of counties rather than municipalities is sound tax law. The theory of property taxation is payment for the protection and benefit afforded by the taxing jurisdiction. The apportionment of the tax on rolling stock in accordance with Article 7169 is more equitable than allowing the city where the principal place of business within the state is maintained to receive all of the tax proceeds from the rolling stock applicable to

the state when it alone does not provide all of the benefit and protection. 46 Texas L. Rev. 591, 593, 595 (1968).

Article 8, sec. 8 of the Texas Constitution and Article 7169 of the Texas Revised Civil Statutes do not exempt railroad rolling stock from taxation. They do, however, fix the *situs* for such taxation on a state and county basis.

We sustain the City's point of error complaining that the trial court erred in ordering execution for court costs against the City because such is forbidden by the laws of this state. City of Houston v. Hamons, 496 S.W.2d 662, 665 (Tex.Civ.App. —Houston (14th Dist.) 1973, writ ref'd n. r. e.). The judgment below is modified so as to eliminate the decree of execution against the City and is otherwise affirmed.

Modified and affirmed.

## ON MOTION FOR REHEARING

Appellant has filed a motion for rehearing challenging our decision in this case. The motion is overruled with respect to the central issue of tax liability. Nevertheless, we grant the motion for the limited purpose of correcting our ruling regarding costs.

██ Tex.Rev.Civ.Stat.Ann. art. 7297 (1960) provides that the state and counties shall be exempt from liability for any costs growing out of an action for taxes due and unpaid on unrendered personal property. This exemption is extended to cities, towns, and independent school districts in Tex.Rev.Civ.Stat.Ann. art. 7343 (1960). *See* City of Waco v. Owens, 442 S.W.2d 324 (Tex.Sup.1969); Electra Independent Sch. Dist. v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645, 653 (Tex.Com. App.1943, opinion adopted); Combs v. City of Port Arthur, 437 S.W.2d 400, 404 (Tex. Civ.App.—Beaumont 1969, writ ref'd n. r. e). It follows that no costs may be taxed against the City in this case.

Under Texas Rules of Civil Procedure, rule 125 each party to a suit is liable to the

officers of the court for all costs incurred by himself. Further, because of the taxing authorities' exemption, a successful taxpayer is not entitled to an award for costs in a tax suit. Combs v. City of Port Arthur, *supra*. Therefore, all costs incurred in the court below and in this Court by the appellee Southern Pacific Transportation Company are adjudged against it.

Motion for rehearing sustained to the extent as set forth above and otherwise overruled.