ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

March 31, 2003

The Honorable Stephen E. Ogden
Chair, Senate Infrastructure Development
  and Security Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0054

Re: Whether, "in the case of emergency and imperative public necessity and with a four-fifths vote of the total membership of each House," the legislature may, pursuant to article III, section 49a of the Texas Constitution, authorize expenditures in excess of the amount of cash and anticipated revenues certified by the Comptroller of Public Accounts (RQ-0025-GA)

Dear Senator Ogden:

You ask us to construe a portion of article III, section 49a of the Texas Constitution. Specifically, you ask whether that provision authorizes the legislature "to make appropriations which exceed the amount of cash and anticipated revenue certified by the Comptroller of Public Accounts in the case of emergency or public necessity and with a four-fifths vote of the total membership of each house, notwithstanding any other language in the same constitutional provision."[1] In addition, you ask whether, if article III, section 49a authorizes such appropriations, "the authority to determine an emergency or public necessity belongs to the Texas Legislature." Request Letter, *supra* note 1.

## I. Background

Section 49 of article III of the Texas Constitution declares that "[n]o debt shall be created by or on behalf of the State, except: (1) to supply casual deficiencies of revenue, not to exceed in the aggregate at any one time two hundred thousand dollars; (2) to repel invasion, suppress insurrection, or defend the State in war; (3) as otherwise authorized by this constitution; or (4) as authorized by Subsections (b) through (f) of this section." TEX. CONST. art. III, § 49(a). Subsections (b) through (f) describe a mechanism by which the legislature may, by a two-thirds vote of each house, call an election and submit to the voters a proposition that, if approved, would authorize the legislature to create debt. *Id.* § 49(b)-(f).

---

[1]Letter from Honorable Stephen E. Ogden, Chair, Senate Infrastructure Development & Security Committee, to Honorable Greg Abbott, Texas Attorney General (Mar. 12, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

In order to ensure that the legislature does not create debt in contravention of article III, section 49, a constitutional amendment was adopted by the voters in 1942 requiring the Comptroller "in advance of each Regular Session of the Legislature to prepare and submit to the Governor and to the Legislature upon its convening a statement under oath showing fully the financial condition of the State Treasury at the close of the last fiscal period and an estimate of the probable receipts and disbursements for the then current fiscal year." *Id.* § 49a(a). The amendment further directed that such statement contain "an itemized estimate of the anticipated revenue based on the laws then in effect that will be received by and for the State from all sources showing the fund accounts to be credited during the succeeding biennium and said statement shall contain such other information as may be required by law." *Id.* Moreover, supplemental statements must be "submitted at any Special Session of the Legislature and at such other times as may be necessary to show probable changes." *Id.*

The 1942 amendment further provided:

> From and after January 1, 1945, save in the case of emergency and imperative public necessity and with a four-fifths vote of the total membership of each House, no appropriation in excess of the cash and anticipated revenue of the funds from which such appropriation is to be made shall be valid. From and after January 1, 1945, no bill containing an appropriation shall be considered as passed or be sent to the Governor for consideration until and unless the Comptroller of Public Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds. When the Comptroller finds an appropriation bill exceeds the estimated revenue he shall endorse such finding thereon and return to the House in which same originated. Such information shall be immediately made known to both the House of Representatives and the Senate and the necessary steps shall be taken to bring such appropriation to within the revenue, either by providing additional revenue or reducing the appropriation.

*See* Tex. H.R.J. Res. 1, 47th Leg., R.S., 1941 Tex. Gen. Laws 1557-58 (original version of constitutional amendment). Section 49a began life as House Joint Resolution 1, and was finally enacted by the legislature on May 15, 1941. It was adopted by the voters at the general election held on November 3, 1942. "Section 49a of Article III is what is popularly known as the 'pay as you go' amendment to the Constitution of Texas . . . . It is generally understood . . . that the purpose of this amendment was to keep in approximate balance the anticipated annual income and expenditures of the State of Texas, a very wholesome purpose. Or stated in another way, the evil sought to be remedied was the appropriation and disbursement of moneys in excess of anticipated or actual income." Tex. Att'y Gen. Op. No. O-6738A (1946) at 5.

Attorney General Opinion O-6738A involved a request regarding the constitutionality, under article III, section 49a, of a special appropriation bill for the City-County Tubercular Hospital at

Laredo. *See id.* at 2. The requestor argued that the appropriation bill for the hospital had been passed with "four-fifths vote of the House, 'in which the bill may be pending,'" the standard required for enacting emergency legislation under article III, section 32. *Id.* at 6; TEX. CONST. art. III, § 32. Attorney General Opinion O-6738A noted that "the bill was passed, containing the findings of imperative public necessity, with a majority of four-fifths of those present in the House of Representatives. Since the vote in the Senate was not recorded, there is no way of determining at this time just what number constituted the majority which approved the bill." Tex. Att'y Gen. Op. No. O-6738A (1946) at 3. The opinion concluded that, although the appropriation bill may well have satisfied the terms of article III, section 32, it did not meet the more stringent requirements of article III, section 49a. "Section 49a requires more than a mere finding of an emergency and imperative public necessity; it provides precisely how the vote shall be taken." *Id.* at 5. "The exception contained in Section 49a provides how the finding shall have been made, namely, by a four-fifths vote of the total membership of each House. . . . [C]ompliance with the requirements of Section 32 does not constitute compliance with Section 49a." *Id.* at 6. *See also* Tex. Att'y Gen. Op. Nos. O-6738 (1945), O-6497 (1945), O-5135 (1943).

The year after the issuance of Attorney General Opinion O-6738A (1946), this office addressed a similar question regarding the procedural requirements for enacting a bill under the terms of article III, section 49a:

> An appropriation bill passes both Houses with a four-fifths vote of the *total membership of each House.* The amount appropriated is in excess of the cash and anticipated revenue of the funds from which such appropriation is made. The bill recites that an emergency and imperative public necessity (stating what it is) requires that this appropriation be made notwithstanding the fact that it exceeds the estimated revenue. This bill would be considered passed, and if not vetoed, would become effective.

Tex. Att'y Gen. Op. No. V-208 (1947) at 7. The opinion then considered the converse situation:

> The same appropriation bill containing the emergency and imperative public necessity clause (as outlined above), is passed by the Legislature by a vote of less than four-fifths of the total membership of each house, or it passes by a four-fifth vote of the total membership of each house but does not contain the emergency and imperative public necessity clause (as outlined above). . . . [T]he Comptroller would find that the appropriation bill exceeds the estimated revenue and would endorse such finding on the bill and return it to the House in which it originated and immediately make such information known to both Houses. . . . [S]uch bill would not be considered as passed. . . . The Legislature would then have three methods by which it could legally pass such appropriation bill and make it effective, that is, (1) the bill could be amended so as to

> include the emergency and imperative public necessity clause (as outlined above), if the bill as originally passed did not contain same, and then pass same by a four-fifths vote of each House, or (2) the Legislature could amend the bill by reducing the appropriation so the amount would not be in excess of the cash and anticipated revenue of the funds from which the appropriation is made, or (3) the Legislature could pass an additional revenue act that would increase the anticipated revenue to such extent that the amount so appropriated in the bill would not exceed the cash and anticipated revenue of the funds from which such appropriation is made.

*Id.* at 7-8. Together, Attorney General Opinions V-208 and O-6738A conclude that the constitution requires that the legislature make the finding of "emergency and imperative public necessity," that such finding must be included in the appropriation bill, and that the bill, in order to become effective, must pass each house by a four-fifths vote of the total membership of that house, and not be vetoed by the Governor.

## II. Analysis

Attorney General Opinions V-208 (1947) and O-6738A (1946) were written in the first few years following the adoption of article III, section 49a. The construction placed upon statutes and constitutional amendments soon after their enactment or adoption is entitled to substantial weight. *Am. Indem. Co. v. City of Austin*, 246 S.W. 1019, 1023 (Tex. 1922) ("contemporaneous exposition of a constitutional provision is of substantial value in constitutional interpretation"); *see also Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 189 (Tex. 1981) (in the absence of specific amendment, statute should be given meaning it had when enacted); *Neubert v. Chicago, R.I. & G. Ry. Co.*, 296 S.W. 1090, 1094 (Tex. 1927) ("It is an elementary rule that the contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect is entitled to great respect in the courts."). Although a contemporaneous construction is not absolutely controlling, it is entitled to substantial weight. *See Neubert*, 296 S.W. at 1094.

In *Gulf, Colorado & Santa Fe Railway Co. v. City of Dallas*, 16 S.W.2d 292 (Tex. Comm'n App. 1929, judgm't adopted), the court considered a constitutional amendment which, the court noted, was "not free from ambiguity." *Id.* at 293. In construing the provision, the court declared:

> In addition to the legislative interpretation that the provision of the Constitution in question did not fix the situs of rolling stock for municipal taxation, where the same was actually located, we find that the Attorney General's department, charged with the duty of advising taxing authorities throughout the state, has for a long period of years given the same construction to such constitutional provision. *This long-continued departmental construction is also entitled to be given weight in determining the true intent and meaning thereof.*

*Id.* at 294 (emphasis added). As we have indicated, in the years immediately following the adoption of article III, section 49a, this office issued several opinions construing that amendment. *See* Tex. Att'y Gen. Op. Nos. V-208 (1947), O-6738A (1946), O-6738 (1945), O-6497 (1945), O-5135 (1943). The two most relevant for our purposes here, Attorney General Opinions V-208 (1947) and O-6738A (1946), categorically concluded that an appropriations bill that passes the legislature with a four-fifths vote of the total membership of each house and that includes a clause reciting the existence of an "emergency and imperative public necessity" comports with the requirements of article III, section 49a.

Furthermore, article III, section 49a was slightly amended by the voters in 1999 as part of an amendment to eliminate duplicative, obsolete, and archaic language. The amendment was proposed by the adoption of House Joint Resolution 62. *See* Tex. H.R.J. Res. 62, 76th Leg., R.S., § 13, 1999 Tex. Gen. Laws 6611, 6613-14. The readopted amendment retained the former first paragraph of section 49a as subsection (a). It reenacted the former second paragraph and renumbered it as subsection (b). The only change made to the new subsection (b) was to remove the two references to "[f]rom and after January 1, 1945." *Id.* at 6613. Finally, the readopted amendment eliminated the former third paragraph, not relevant to our purposes here, which had dealt with "the issuance, sale, and retirement of serial bonds." *Id.* at 6614.

It must be presumed that the voters who readopted article III, section 49a in 1999 were aware of the long-standing administrative construction placed on the former version of that provision. As the Texas Supreme Court said in *Shepherd v. San Jacinto Junior College District*, 363 S.W.2d 742 (Tex. 1962):

> General public acceptance of and acquiescence in a certain construction of a constitution extending over a long period of time, particularly when occasions for the questioning of such construction have arisen repeatedly, gives rise to a doctrine that affords to such acceptance a persuasiveness akin to precedent. . . . While this public acquiescence could not result in a precedent in the judicial sense, yet, this general acceptance does carry with it a persuasiveness of compelling force.

*Id.* at 752-53. In the situation before us, this "general public acceptance and acquiescence" about the conclusions of Attorney General Opinions V-208 (1947) and O-6738A (1946) was expressly ratified by the voters' readoption of article III, section 49a in 1999.

We conclude that article III, section 49a of the Texas Constitution authorizes the legislature "to make appropriations which exceed the amount of cash and anticipated revenue certified by the Comptroller of Public Accounts in the case of emergency or public necessity and with a four-fifths vote of the total membership of each house, notwithstanding any other language in the same constitutional provision." Request Letter, *supra* note 1. Furthermore, the legislature, in adopting such appropriation, has both the authority and the duty to determine in such bill that an "emergency or imperative public necessity" exists.

## S U M M A R Y

In order to appropriate funds that exceed the amount of cash and anticipated revenue certified by the Comptroller of Public Accounts, an appropriation bill must state the legislature's finding that an "emergency or imperative public necessity" exists, and the bill must then be enacted by a four-fifths vote of the full membership of each house of the legislature.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General - General Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee